IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TINA M. FINK,

                Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

                Defendant.[1]

OPINION and ORDER

20-cv-838-jdp

---

Plaintiff Tina M. Fink seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Fink was not disabled within the meaning of the Social Security Act. Fink contends that administrative law judge (ALJ) Corinne T. McLaughlin didn't adequately consider the opinion evidence in accordance with 20 C.F.R. § 404.1520c. But the ALJ generally complied with the regulation by explaining why he believed certain opinions were unsupported and inconsistent with the record. Any errors were harmless. The court will affirm the decision and cancel the hearing scheduled for August 24, 2021.

ANALYSIS

Fink sought benefits based on both physical and mental impairments, alleging disability beginning in August 2019, when she was 51 years old. R. 16, 24.[2] In a June 2020 decision, the

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 14.

ALJ found that Fink suffered from five severe impairments: diabetes mellitus, obesity, posttraumatic stress disorder, depression, and generalized anxiety disorder. R. 16. After finding that Fink's impairments weren't severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed to Fink the residual functional capacity (RFC) to perform light work with additional physical restrictions. R. 18. As for Fink's mental abilities, the ALJ included in the RFC that Fink could "understand, remember, and carry out simple, routine instructions and tasks." *Id.* The ALJ included no other mental restrictions in the RFC.

Based on the testimony of a vocational expert, the ALJ found that Fink was not disabled because she could perform her past job as a cashier as well as jobs such as routing clerk, cleaner, housekeeper, and parking lot attendant. R. 23–24. The Appeals Council declined review. R. 1–3. Fink now appeals to this court.

On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

All of Fink's arguments relate to the ALJ's handling of the opinion evidence. Under the new regulations, which the parties agree apply to Fink's case, the ALJ was required to consider how well supported each opinion was and how consistent it was with the rest of the administrative record. *See* 20 C.F.R. § 404.1520c(b)(2).

The ALJ considered the medical opinions of treating nurse practitioner Jessiket Jamgochian, treating psychiatrist Shirin Sultana, state agency consulting physicians Tulay Gulsen and Sal Nimmagadda, and state agency consulting psychologists Deborah Pape and David Biscardi. The ALJ also considered the third-party statements of Alicia Dolph (Fink's adult daughter) and Derek Fink (Fink's adult stepson). Fink challenges the ALJ's handling of every opinion except those of the consulting psychologists.

## A. Treating nurse practitioner

Jamgochian filled out a questionnaire provided by Fink's counsel. She opined that Fink: (1) could walk one to two blocks without rest; (2) could stand for up to 15 minutes at a time and less than two hours over the course of an eight-hour work day; (3) could sit for more than two hours at a time; (4) required a job that allows her to sit, stand, or walk "at will"; and (5) could occasionally lift up to 20 pounds. R. 651–55. The ALJ found Jamgochian's opinion unpersuasive. R. 22. He wrote that the opinion wasn't supported because it was based on "primarily negative findings." *Id.* Also, the opinion was inconsistent with objective examination findings, such as "no acute distress, 5/5 strength in all extremities, normal range of motion, reflexes normal and symmetric, sensation grossly intact, normal gait, no pretibial edema, extremities normal, monofilament testing revealing 8/8 points, no deformities, edema, or skin discoloration." *Id.* The ALJ also cited "minimal physical exam findings within a year of treatment, including a steady gait and normal sensory testing." *Id.* Fink challenges the ALJ's reasons regarding both support and consistency.

### 1. Lack of support

The ALJ's conclusion that Jamgochian's opinion was based on "primarily negative findings" comes from a section of the questionnaire that asked for Jamgochian's clinical

3

findings. Jamgochian wrote, "sensation intact, no abnormal findings." R. 652. Fink says that the ALJ overlooked other support for Jamgochian's opinions that were included in the questionnaire: (1) the diagnosis of diabetes mellitus with a prognosis of "variable over lifespan," R. 652; (2) a finding that Fink suffered from muscle weakness, retinopathy, dizziness/loss of balance, *id.*; and (3) a statement that Fink has "mild variability in blood sugars," R. 653.

The portions of the questionnaire cited by Fink don't undermine the ALJ's conclusion that Jamgochian's opinions lacked support. First, a diagnosis is not itself sufficient to show a disability. *See Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007) ("[T]he existence of these diagnoses [including diabetes] and symptoms does not mean the ALJ was required to find that Skinner suffered disabling impairments."). The ALJ found that Fink's diabetes was a severe impairment, so the diagnosis isn't inconsistent with the ALJ's decision.

Second, Jamgochian didn't describe the severity or frequency of any symptoms related to muscle weakness, retinopathy, or dizziness, and Fink cites nothing in her medical records showing that any of those symptoms are disabling for her. In fact, the ALJ noted that Fink's retinopathy required no treatment, R. 16 (citing R. 582), and Fink doesn't challenge that finding.

Third, Jamgochian observed only "mild" variability in Fink's blood sugar levels, which is consistent with the ALJ's observations, R. 19. Jamgochian didn't connect any variability in blood sugar levels with an ability to stand, walk, or lift objects. Rather, Jamgochian made the observation to explain why she checked a box indicating that Fink is "[c]apable of low stress jobs." R. 653. There is no explanation in the opinion for the standing, walking, and lifting limitations, so the ALJ was entitled to discount them. *See Vang v. Saul,* 805 F. App'x 398, 401 (7th Cir. 2020).

Fink cites medical websites for the propositions that diabetes can cause severe muscle weakness and retinopathy and that fluctuations in blood sugar levels can be severe enough to "interfere with daily life." R. 16. But Fink cites no authority for the view that she can rely on the internet to make up for gaps in a medical opinion. *See Maddox v. Saul,* No. 20-2899, —Fed. Appx. —, 2021 WL 2531152, at *3 (7th Cir. June 21, 2021) ("[W]e decline to consider excerpts of medical studies and diagnostic information . . . that [the plaintiff] has submitted which are not part of the record."). In any event, the passages quoted from the websites say only what symptoms *can* be. They do not say that the symptoms are always disabling, and they do not provide any support for the view that Fink's symptoms are so severe that she cannot stand for more than 15 minutes at a time or walk more than two blocks without rest.

Fink similarly speculates that she "may have trouble staying on [her] feet" because she is obese. Dkt. 16, at 19. But Jamgochian said nothing about Fink's obesity in her opinion, and Fink points to no evidence that her obesity requires more restrictions than what the ALJ found in the RFC. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (citations and internal quotation marks omitted) ("An ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work.").

### 2. Inconsistency with the record

Fink doesn't challenge the ALJ's summary of her objective examination findings related to things such as strength in her extremities, range of motion, gait, reflexes, and sensation. But she says that the ALJ erred in relying on those findings to discount Jamgochian's opinion because the ALJ didn't have an adequate basis for concluding that Jamgochian's opinion was inconsistent with those findings. Specifically, Fink says Jamgochian's opinion is supported by

5

"symptoms and diagnoses related to the endocrine system rather than the musculoske[le]tal," so the ALJ "engaged in an apples and oranges comparison." Dkt. 16, at 18.

It isn't clear what point Fink is making. Regardless what symptoms Jamgochian was relying on, she offered opinions about Fink's exertional limitations related to standing, walking and lifting. The objective examination findings provided support for a view that Fink wasn't as limited as Jamgochian said she was on those activities.

The court also rejects Fink's contention that the ALJ was "playing doctor" because he "offered no treatise, medical opinion, or health article indicating the diabetes will negatively affect strength in all extremities, ranges of motion, normal or symmetric reflexes, sensation, gait, or result in pretibial edema." *Id.* at 17. The question before the ALJ wasn't whether diabetes (or any other physical impairment) necessarily affects the results of physical examinations on the matters listed by the ALJ. Rather, the ALJ was considering whether the examination findings were consistent with a finding that Fink couldn't stand for more than 15 minutes at a time or walk for more than two blocks without rest. The ALJ is required to evaluate the evidence and determine whether opinions are consistent with the record. It was reasonable for the ALJ to determine even without a medical opinion that examinations finding no strength deficits and no problems with gait are inconsistent with the severe limitations found by Jamgochian.

### 3. Other factors

Fink contends that the ALJ didn't adequately consider Jamgochian's specialty or the extent of her treating relationship with Fink. But the regulations are clear that the ALJ's isn't required to discuss those factors. 20 C.F.R. § 1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section

6

[including the nature of relationship and the medical source's specialty], as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record."). In any event, Fink doesn't explain how those factors would have made a difference to the ALJ's conclusion. The deficiencies that the ALJ found in Jamgochian's opinion had nothing to do with Jamgochian's specialty or the length of her relationship with Fink.

The court concludes that the ALJ adequately explained her reasons for discounting Jamgochian's opinion, as required by § 404.1520c(b)(2).

## B. Treating psychiatrist

Sultana filled out a questionnaire that contained several sections. First, he checked boxes on a form indicating that Fink met the requirements for Listing 12.04 (depressive, bipolar, and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), Listing 12.15 (trauma and stressor-related disorders), but he didn't put checks next to all the required symptoms for those listings. In the space for an explanation of his findings, he wrote that Fink initially met the criteria for certain mental health conditions but that she was "responding well" to pharmacotherapy and her symptoms had improved. R. 731–35.

Second, Sultana checked boxes indicating whether limitations in various mental abilities would preclude Fink from working zero percent of the time, five percent of the time, 10 percent of the time, at least 15 percent of the time. R. 737–38.

Third, Sultana checked boxes indicating that Fink would be off-task more than 30 percent of the time, would be absent from work at least five days a month, would be unable to complete an eight-hour workday at least five days a month, could perform a job 50 percent as efficiently as an average worker, and could not work eight hours a day, five days a week on a sustained basis. R. 738–39.

Fourth, Sultana found that Fink had no limitations or mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. R. 739.

Fifth, Sultana found that Fink would have one or two episodes of decompensation within a one-year period. *Id.*

The ALJ found that Sultana's opinion was unpersuasive for four reasons: (1) Sultana had noted improvement in Fink's mental health symptoms as a result of treatment; (2) the limitations Sultana found were "primarily physical"; (3) Fink sought "minimal" mental health treatment; (4) Fink's mental status examinations were "mostly unremarkable"; (4) Sultana's opinions "infringe on a matter reserved for the Commissioner, whether the claimant is disabled." R. 22.

The ALJ was entitled to discount Sultana's opinion. The opinion is difficult to follow in some sections and appears internally contradictory. As noted above, Sultana found that Fink met three medical listings, but he didn't find that Fink suffered from all the symptoms required to make that finding. Regardless, it was reasonable for the ALJ to interpret Sultana's opinion as resting primarily on Fink's physical impairments, for several reasons.

First, Sultana wrote that Fink had responded well to medication and her mental health symptoms related to the listings had improved. Second, Fink's prognosis for her mental health conditions was "good." R. 736. Third, Fink had no limitations or mild limitations on the mental health abilities listed in the report. R. 739. Fourth, Sultana found that most of Fink's mental limitations would not preclude her from doing her job more than five percent of the time and that none of her mental limitations would preclude her from doing her job more than 10 percent of the time. R. 736–37. Fifth, Sultana wrote that Fink's most significant limitations—

8

those related to being off-task, being absent from work, and being unable to complete an eight-hour day—were based on Fink's "physical limitation due to her chronic medical illness and its consequences on her mental health." R. 741. Sultana didn't identify Fink's "chronic medical illness," but he seemed to be referring to physical impairments. In another section of the questionnaire, he wrote that Fink "has [a] chronic medical condition which in my opinion will hinder her from working *rather than her psychological condition*." R. 740 (emphasis added). Fink identifies no findings in the questionnaire that are both related to her mental health impairments and would support a finding of disability in this case.

Fink says that the ALJ wasn't entitled to disregard Sultana's opinions about her physical impairments because Sultana is a psychiatrist, which means that he "completed medical school and has at least a fundamental understanding and ability to opine on physical limitations and their interactions with Fink's mental health." Dkt. 16, at 25. This argument isn't persuasive. The regulations allow the ALJ to consider whether a medical source is a "specialist in the relevant area of specialty." 20 C.F.R. § 1520c(c)(4). Even if Sultana was qualified to evaluate Fink's physical impairments, Fink cites no evidence that Sultana treated any of her physical impairments, conducted an examination of her based on those impairments, or even reviewed Fink's other medical records related to those impairments. So there is simply no support for any opinion by Sultana that is based on Fink's physical impairments.

Even if the more severe limitations found by Sultana were based on Fink's mental impairments, it was reasonable for the ALJ to conclude that such limitations were inconsistent with Fink's mental status examinations. The ALJ cited several mental status examinations that did not reveal problems with Fink's mood, thought process, memory, concentration, insight, judgment, or orientation. R. 592, 597, 602, 613, 644, 706, 708. The ALJ also cited documents

9

in which Fink reported that her mood was good and her anxiety was well controlled. R. 694, 699.

Fink argues that the ALJ cherry-picked the record because she failed to discuss three records showing that Fink suffered from mental health symptoms. R. 594–97, 600–01, 707–08. But the ALJ acknowledged that Fink had "sporadic mood and tearfulness findings." R. 21. Fink points to nothing in the records she cites that supports a finding of ongoing, severe mental health symptoms. In one record, Fink said that her mood and anxiety were improved, but "not as good as she wants them to be." R. 599. She also reported that her anxiety was worse "at times" because she is "awaiting on social security supplement." *Id.* In another record, she reported two nightmares about "ending everything," but she denied any intent to harm herself. R. 596. In the third record, the psychologist reported that Fink cried during a therapy session in which she discussed her history of being bullied and mistreated by friends and family. R. 700. Fink identifies no basis for finding that the above symptoms render her unable to work.

It was reasonable for the ALJ to discount Sultana's opinions, both because they appeared to be based primarily on physical impairments and because Fink's mental status examinations didn't reveal evidence of a disabling mental health condition. This makes it unnecessary to consider whether the ALJ should have relied on Fink's "minimal" mental health treatment or whether Sultana offered opinions that were reserved for the commissioner.

## C. State agency consultants

Gulsen and Nimmagadda both opined that Fink could perform light work. R. 21. Nimmigadda found additional restrictions related to posture, workplace hazards, and exposure to vibration or wetness. R. 129–31. The ALJ found these opinions persuasive, and he adopted Nimmigadda's additional postural and hazard restrictions. R. 22. He rejected the

environmental restrictions related to vibration and wetness, and he added restrictions for handling and fingering based on Fink's subjective complaints. *Id.*

Fink contends that the ALJ failed to adequately explain why he adopted some of Nimmigadda's additional restrictions, rejected other restrictions, and added a restriction for handling and fingering. The court need not consider this contention because any error was harmless.

The only restrictions that the ALJ didn't include were related to exposure to vibration and wetness. Any error by the ALJ on those restrictions was harmless for two reasons. First, Fink points to no evidence that she has limitations that would require such restrictions. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (plaintiff must "identify medical evidence that would justify further restrictions"). Second, the ALJ denied Fink's disability claim based on his finding that Fink could perform her previous job as a cashier as well as jobs as routing clerk, housekeeper, and parking lot attendant. As the commissioner points out, none of those jobs involve exposure to vibration or wetness. *See* Dkt. 18, at 15 (citing *Dictionary of Occupational Titles*).

The other differences between the ALJ's RFC and the consultants' opinions were *favorable* to Fink. As this court has noted before, a claimant isn't harmed if the ALJ finds that she is more limited than what the evidence would suggest. *See, e.g., Olson v. Saul*, No. 20-cv-672-jdp, 2021 WL 1783136, at *3 (W.D. Wis. May 5, 2021). So a failure to explain the reasons for additional restrictions isn't a basis for remanding the case.

### D. Third-party statements

In addition to the medical opinions, the ALJ considered adult function reports prepared by Alicia Dolph (Fink's adult daughter) and Derek Fink (Fink's adult stepson). Both made

11

numerous observations about Fink's daily activities. R. 373–89. The ALJ didn't discuss any particular statements in the reports, but he wrote that the reports weren't consistent with the physical examinations or the mental status examinations. R. 23.

Fink objects to the ALJ's handling of the third-party statements. As Fink acknowledges, the ALJ wasn't required to explain how he considered evidence from nonmedical sources such as family members. *See* 20 C.F.R. 404.1520c(d). But Fink cites § 404.1520c(c)(2), which says, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." The court understands Fink to argue that the ALJ was required to give more weight to the opinions of Jamgochian and Sultana because they were consistent with the third-party statements.

The court doesn't interpret § 404.1520c(c)(2) as requiring an ALJ to give more weight to a medical opinion simply because it is consistent with a third-party statement. Rather, § 404.1520c(c)(2) recognizes what is obvious: the more consistent an opinion is with other evidence, the more persuasive it is. But it is ultimately up to the ALJ to weigh the evidence and determine which evidence is most persuasive. *See Hapner v. Saul*, 818 F. App'x 552, 553 (7th Cir. 2020) ("[I]t was up to the agency to weigh the conflicting medical opinions in the record."). In this case, the ALJ gave reasons for discounting the medical opinions at issue and the third-party statements. Fink's argument is little more than a request to reweigh the evidence, which the court may not do. *See Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

In any event, the third-party statements Fink cites provide little support for Jamgochian and Sultana's opinions. Fink points to only two statements in the adult functions reports that she says are consistent with the medical opinions. First, both of the reports state that Fink

12

can't stand for "long periods of time," R. 374, 382, which Fink says is consistent with Jamgochian's opinion that Fink can't stand more than 15 minutes at a time. Fink's daughter and stepson can observe how long Fink stands before sitting down, but they aren't qualified to determine what Fink's actual standing abilities are. And even if they were, they don't explain what they mean by "long periods of time" or what they based their determination on, so their statements aren't helpful.

Second, Fink says that the adult function reports are consistent with Sultana's opinion that Fink has "disturbed" sleep. Dkt. 16, at 31. But Sultana didn't say that. Rather, Fink cites the portion of Sultana's opinion in which she wrote that "occasional nightmares, drowsiness" are side effects of Fink's medication. R. 736. Sultana didn't give an opinion that Fink's ability to work was impaired by these side effects. So even if the adult function reports were consistent with Sultana's opinion, that wouldn't support a finding of disability.

### E. Reply brief

Fink raised several arguments for the first time in her reply brief, including: (1) the opinions of the consulting physicians weren't adequately supported, Dkt. 21, at 7; (2) the ALJ failed to consider Fink's fatigue, *id.* at 8; (3) the ALJ didn't explain why he found both consulting physician opinions to be persuasive despite their "very different limitations," *id.* at 15; (4) Fink was harmed by the ALJ's handling of the consulting physician opinions because of the ALJ's "flawed findings pertaining to" the other medical opinions, *id.* at 16; (5) evidence in the record related to neuropathy, slow-healing infections, cardiac arrythmias, and cognitive impairments supports Jamgochian's opinion, *id.* at 17–18; and (6) if the ALJ decides to consider any of the regulatory factors in § 404.1520c(c)(3)–(5), the court may reverse the ALJ's decision for discussing those factors "perfunctorily," even if the ALJ wasn't required to discuss those

factors, *id.* at 19–20. Fink forfeited each of those arguments by failing to include them in her opening brief, *see Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016), so the court declines to consider them.

ORDER

IT IS ORDERED that that that the decision of the commissioner is AFFIRMED and the August 24, 2021 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered August 19, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge